MATTER OF LEE

Application for Permission to Reapply

A-16027182

*Decided by Commissioner December 21, 1978*

(1) A record of immigration violations standing alone will not conclusively support a finding of lack of good moral character ( *Matter of Carbajal*, Interim Decision 2765 (Comm. 1978) ).

(2) Recency of deportation can only be considered when there is a finding of a poor moral character based on moral turpitude in the conduct and attitude of a person which evinces a callous conscience. In such circumstances, there must be a measurable reformation of character over a period of time in order to properly assess an applicant's ability to integrate into our society. In all other instances when the cause for deportation has been removed and the person now appears eligible for issuance of a visa, the time factor should not be considered.

(3) *Matter of H—R—*, 5 I&N Dec. 769 (C.O. 1954); *Matter of Chim*, 14 I&N Dec. 357 (R.C. 1973), modified to the extent that sections 212(a)(16) and (17) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(16) and (17), are interpreted to include remedial relief for previously deported or excluded aliens.

ON BEHALF OF PETITIONER:  Jack Wasserman, Esquire
1707 H Street, N.W.
Washington, D.C. 20006

This matter is before the Commissioner on certification as provided by 8 C.F.R. 103.4, for review of the Regional Commissioner's decision to dismiss the appeal from the District Director's order denying an application for permission to reapply for admission into the United States after deportation.

The applicant is a 39-year-old native and citizen of China residing in Hong Kong. He first came to Service attention as a crewman on board the M/V Eastern Star applying for permission to land temporarily in pursuit of his calling on June 1, 1965. His application was refused and he was ordered detained on board as a mala fide crewman. On a subsequent arrival on the same vessel on November 9, 1965, at Port Angeles, Washington, he was granted permission to land temporarily as a crewman. On November 18, 1965, the applicant, accompanied by two other crewmembers, left the vessel at Port Angeles, Washington,

and traveled by bus to Seattle, Washington, despite a standing order issued by the Captain of the M/V Eastern Star that shore leave for all crewmembers was restricted to the immediate area of Port Angeles. The applicant and his two companions were taken into custody at the bus station in Seattle by immigration officers. They were charged with attempting to desert the vessel on which they arrived, permission to land was revoked, and they were ordered deported pursuant to section 252(b) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1282(b). The applicant was returned to his vessel at Port Angeles on November 20, 1965, and ordered detained on board in custody of the Master. His deportation from the United States was effected on November 24, 1965, upon the vessel's departure from the United States. The applicant was refused landing privileges as a crewman on five subsequent occasions of arrival on foreign-registered vessels in the United States. On the fifth occasion of arrival (July 3, 1969), he deserted his vessel, the M/V Deganya, at Newark, New Jersey. Efforts by the Service to locate the applicant were unsuccessful. On July 21, 1975, a sixth-preference petition was submitted by the China Garden Restaurant, Incorporated, Raynham, Massachusetts, on the applicant's behalf. This petition was approved on May 21, 1976. At the request of this Service, the applicant surrendered himself to this Service at Boston, Massachusetts, and was granted the privilege of departing voluntarily from the United States. The record contains verification of departure on August 21, 1976, from Anchorage, Alaska, to Tokyo, Japan.

The applicant made application for an immigrant visa at the United States Consulate in Hong Kong and was informed on October 22, 1976, that he needed permission to reapply for admission into the United States after deportation. The instant application was then filed on October 29, 1976, at Boston and subsequently transferred to the Seattle office, which had jurisdiction in the matter pursuant to 8 C.F.R. 212.2(c).

The District Director denied the application as a matter of discretion and cited *Matter of Tin*, 14 I&N Dec. 371 (R.C. 1973), and *Matter of Chim*, 14 I&N Dec. 357 (R.C. 1973), as justification for his action. The Regional Commissioner affirmed the District Director's decision and dismissed the appeal.

Section 212(a)(17) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1182(a)(17), has its roots in section 3 of the Act of 1917. Section 3 made prostitutes and other immoral classes who had been previously debarred or deported from the United States excludable unless they had received permission from the Secretary of Labor to reapply for admission. The Act of March 2, 1929, extended this provision, making it a felony to reenter the United States after having

276

been deported unless the Secretary had granted permission to reapply for admission after deportation.

The Immigration and Nationality Act of 1952, as amended, incorporated the same language but made a distinction between those previously excluded (section 212(a)(16) of the Act) and those who had been deported (section 212(a)(17) of the Act). Those previously excluded require permission of the Attorney General to reapply for admission if that application was to be made within 1 year of the date of exclusion and deportation. Those previously deported require the permission of the Attorney General to reapply for admission at any time after deportation.

The intent of Congress in enacting section 212(a)(16) and (17) can best be found in the conclusions and recommendations of the Senate Committee on the Judiciary in their report (S. Rep. No. 1515, 81st Cong., 2nd Sess. (1950)) concerning the effectiveness and necessity of retaining the various laws affecting immigration. A study was conducted pursuant to S. Res. 137, 80th Cong., 1st Sess., for the purpose of bringing all laws pertaining to immigration and nationality under one composite heading. (The Immigration and Nationality Act of 1952 was the fruit of these labors.) The Committee report issuing from this study addressed the subject of previously deported or excluded aliens and made the following conclusions and recommendations.

Speaking of section 3 of the 1917 Act, the Committee stated:

The subcommittee finds that the law as it is now written is adequate to prevent the abuse of the exclusion and deportation laws by aliens who attempt to reapply for admission to the United States soon after their exclusion or deportation, *as well as to allow reconsideration when the alien is able to overcome the handicaps which brought about the original exclusion and deportation.* Page 365. (Underscoring supplied.)

The second clause of these conclusions and recommendations directly concerns the instant application. The import of these words is to give a previously deported alien a second chance and connotes a remedial relief rather than a punitive provision of statute. In this regard, I find the several decisions affecting permission to reapply after deportation lacking this attitude. *Matter of H—R—*, 5 I&N Dec. 769 (C.O. 1954), and *Matter of Chim, supra,* convey a punitive attitude and attach conditions beyond anything I believe Congress intended in granting the Attorney General authority to allow previously deported or excluded aliens to reapply for entry into the United States. The discussion of the issues raised in the instant case will be made with the foregoing in mind.

1. Moral character of the applicant:

In a recent case before me on certification, the Regional Commissioner also held that a record of immigration violations denoted poor moral character and cited this finding as one of the adverse factors considered. In that case, I ruled that contention was

without merit, and reaffirmed *Matter of T—*, 1 I&N Dec. 158 (BIA 1941), in that a record of immigration violations standing alone will not conclusively support a finding of a lack of good moral character. In the instant case, I will likewise dismiss the contention that the applicant is a person lacking good moral character.

2. Recency of the deportation:

The recency of the deportation is mentioned as a factor to be considered in *Matter of Tin, supra.* However, there is but a passing reference to this factor. ("As a further example, an alien who was deported many years ago solely for a minor immigration violation and who has a bona fide reason for wanting to immigrate to the United States, may be granted permission to reapply....")

I believe that the recency of the deportation can only be considered when there is a finding of poor moral character based on moral turpitude in the conduct and attitude of a person which evinces a callous conscience. In such circumstances, there must be a measurable reformation of character over a period of time in order to properly assess an applicant's ability to integrate into our society. In all other instances when the cause of deportation has been removed and the person now appears eligible for issuance of a visa, the time factor should not be considered.

3. Need for the applicant's services in the United States:

The Regional Commissioner considered the need for the services of the applicant in the United States and dismissed this as a favorable factor. However, I find there is merit in counsel's contention that where the applicant will provide services to the public in a job category where sufficient workers in the United States are not available, this is a favorable factor in behalf of the applicant.

4. Applicant's contention that he did not know he was deported:

This contention will be dismissed without discussion. The record clearly shows he was deported pursuant to section 252(b) of the Act and does need permission of the Attorney General to apply for admission to the United States.

5. Length of time applicant had been in the United States:

I can only relate a positive factor of residence in the United States where that residence is pursuant to a legal admission or adjustment of status as a permanent resident.

If we were to reward a person for remaining in the United States in violation of law, the structure of all laws pertaining to immigration would be seriously threatened. Therefore, I will dismiss counsel's contention that this should be considered a favorable factor.

In item #1, the Regional Commissioner discussed the record of immigration violations in the context of equating these violations with a finding of a lack of good moral character. While I dismissed the finding of poor moral character, I will not lightly dismiss a serious record of immigration violations. An evinced callous attitude toward violating the immigration laws without a hint of reformation of character should be considered as a heavily weighted adverse factor. In the instant case, I do find that hint of reformation of character in the attitude of the applicant in surrendering himself to the Service and departing the United States voluntarily as requested. While it may be argued that his motivation in doing so was predicated on self-interest,

it is only natural that positive character reformation is more apt to take place when a benefit seems likely to accrue to a person.

In applying the principles set forth in this discussion and weighing all factors present, I find that the applicant should be granted permission to reapply for admission into the United States after deportation and will set aside the order of the District Director denying the application and the Regional Commissioner's dismissal of the appeal. *Matter of Chim, supra,* and *Matter of Tin, supra,* are modified insofar as the weight given to adverse factors is inconsistent with the weight accorded the adverse factors in this decision.

ORDER: The District Director's decision denying the application for permission to reapply for admission after deportation and the Regional Commissioner's dismissal of appeal to that decision is hereby set aside, and the application is granted.