MATTER OF DI SANTILLO

In Deportation Proceedings

A-30619277

*Decided by Board May 24, 1983*

(1) An alien may be deported under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(1), if, at the time of entry, he is excludable under section 212(a)(17) of the Act, 8 U.S.C. 1182 (a)(17), as one who, having been arrested and deported, fails to obtain consent from the Attorney General to apply or reapply for admission prior to his embarkation.

(2) Section 252(b) of the Act, 8 U.S.C. 1282(b), provides a summary deportation procedure under which an alien crewmen's D-1 conditional landing permit may be revoked and the alien deported without a hearing.

(3) The summary procedure under section 252(b) of the Act, which governs only the alien crewman whose D-1 conditional landing permit is formally revoked prior to the departure of his vessel, represents a narrow exception to the deportation procedures found in section 242(b) of the Act and reflects Congress' commitment to address and correct the serious problem of illegal crewmen in the United States.

(4) An alien who is deported pursuant to the summary procedures contained in section 252(b) of the Act is not relieved of the requirements of obtaining consent from the Attorney General to reapply for admission under section 212(a)(17) of the Act.

(5) The revocation of respondent's D-1 conditional landing permit and his removal from the United States pursuant to the provisions of section 252(b) of the Act constituted an "arrest and deportation" for purposes of section 212(a)(17) and, therefore, his deportability under section 241(a)(1) is established by his failure to obtain consent from the Attorney General to reapply for admission as a lawful permanent resident.

CHARGE:

ORDER: Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at of entry under section 212(a)(17) [8 U.S.C. 1182(a)(17)]—No permission to reapply after deportation

ON BEHALF OF RESPONDENT:
Charles Gordon, Esquire
931 Investment Building
1511 K Street, N.W.
Washington, D.C. 20005

ON BEHALF OF SERVICE:
Paul Vincent
Appellate Trial
Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The Immigration and Naturalization Service has appealed from the decision of the immigration judge, dated October 22, 1980, terminating

the deportation proceedings brought against the respondent. The appeal will be sustained.

The respondent is a 37-year-old native and citizen of Italy who was admitted to the United States as a lawful permanent resident on March 23, 1970. Prior to that entry he was a crewman aboard the Italian vessel, M/V Maria Amelia Lolli Chetti, when it docked at Baltimore, Maryland on December 10, 1962. The respondent requested and was issued a "D-1" Conditional Landing Permit, in accordance with 8 C.F.R. 252.1(d)(1) and section 252(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1282(a)(1).[1] On December 11, 1962, the respondent was served with Form I-99, Notice of Revocation and Penalty, revoking his "D-1" conditional landing permit and directing his detention and deportation aboard the M/V Maria Amelia Lolli Chetti pursuant to section 252(b) of the Act.[2] That section provides in relevant part:

[A]ny immigration officer may, in his discretion, if he determines that an alien . . . does not intend to depart on the vessel or aircraft which brought him, revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a)(1), take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel or aircraft, if practicable, and such crewman shall be deported from the

---

[1] Section 252(a)(1) provides:

No alien crewman shall be permitted to land temporarily in the United States except as provided in this section . . . . If an immigration officer finds upon examination that an alien crewman is a nonimmigrant . . . and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subsequent proceedings as provided in subsection (b), and for a period of time, in any event, not to exceed –

(1) the period of time (not exceeding twenty-nine days) during which the vessel or aircraft on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel or aircraft on which he arrived[.]

[2] The Notice (Exhibit 8) provided:

Your D-1 Conditional Landing Permit has been revoked, and your detention and deportation aboard the M/V Maria Amelia Lolli Chetti has been directed, pursuant to Section 252(b) of the Immigration and Nationality Act.

You are hereby placed on notice that under the law a crewman whose D-1 Conditional Landing Permit is revoked, and who is then deported, cannot there after lawfully enter the United States, unless prior to his embarkation at a place outside the United States, the Attorney General has expressly consented to his reapplying for admission. Moreover, under the law a crewman who enters or attempts to enter the United States at any time after such deportation without having received permission from the Attorney General to reapply for admission, is guilty of a felony and, upon conviction, is liable to imprisonment of not more than two years, or a fine of not more than $1,000, or both such fine and imprisonment.

The respondent signed the Notice, acknowledging that he had received a copy, that it had been read and explained to him, and that he understood it. The Notice also contains a verification by a Service Officer that the Notice was read and explained to the respondent through an interpreter in the Italian language.

United States at the expense of the transportation line which brought him to the United States . . . . Nothing in this section shall be construed to require the procedure prescribed in section 242 of this Act to cases falling within the provisions of this subsection.

On June 28, 1977, an Order to Show Cause was issued against the respondent, alleging that he had been arrested and deported from the United States on December 11, 1962, at Baltimore, Maryland and that he had reentered on March 23, 1970, as an immigrant without first receiving permission from the Attorney General to reapply for admission. The respondent was charged with being deportable under section 241(a)(1) of the Act, 8 U.S.C. 1251 (a)(1).[3] At his deportation hearing begun on September 25, 1979, and completed on October 22, 1980, the respondent, who was represented by counsel, admitted that he was an alien and that he had entered the United States on March 23, 1970, as an immigrant. He denied the allegations that he had been arrested and deported from the United States on December 11, 1962, and that he had not been granted permission to reapply for admission. He also denied the charge of deportability as an alien excludable at entry.

The respondent's deportation hearing was continued during the pendency of his appeal from the April 7, 1979, conviction under section 276 of the Act, 8 U.S.C. 1326, for reentry after having been arrested and deported. The Third Circuit reversed the judgment of conviction on the ground that the respondent's prosecution under section 276 was barred by the federal statute of limitations. See United States v. DiSantillo, 615 F.2d 128 (3 Cir. 1980).

Following the reversal of his conviction, the respondent filed a motion to dismiss deportation proceedings. He argued that the revocation of a crewman's conditional landing permit and his removal from the United States pursuant to section 252(b) of the Act did not constitute an "arrest and deportation" for purposes of section 212(a)(17). He claimed that the perpetual bar against a deported alien[4] was a severe sanction and that there was nothing in the language or structure of the statutes, or its legislative history, to warrant an assumption that Congress intended that sanction to apply to crewmen whose conditional landing permits had been revoked. He further argued that in referring to an alien who was "arrested and deported" Congress evidently intended to signify one

---

[3] Under section 241(a)(1), an alien who "at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry" may be deported.

One such excludable class consists of "(a)liens who have been arrested and deported . . . , unless prior to their embarkation . . . the Attorney General has consented to their applying or reapplying for admission." Section 212(a)(17).

[4] Section 212(a)(17) as amended by section 4 of the Immigration and Nationality Act Amendments of 1981, Pub. L. 97-116, 95 Stat. 1611 (Dec. 29, 1981), now requires previously deported aliens to obtain permission to reapply for admission if they seek admission within 5 years of their deportation or removal.

who had undergone the formal expulsion process now described in sections 242 and 243 of the Act, and that the terms originated at a time when all formal deportation proceedings were commenced with the alien's arrest. The respondent relied on *United States v. Wong Kim Bo*, 466 F.2d 1298 (5 Cir. 1972), *rehearing denied* 472 F.2d 720; *United States v. Farias-Arroyo*, 528 F.2d 904 (9 Cir. 1975); and *United States v. DiSantillo, supra*, to support his arguments that the "arrested and deported" language of section 212(a)(17) relates to the expulsion of aliens through a formal deportation proceeding and the issuance of a warrant of deportation and not to the informal revocation and removal procedure under section 252(b) of the Act. The immigration judge, adopting the respondent's arguments, found that he had not been "arrested and deported" in December 1962 for purposes of section 212(a)(17), did not require the Attorney General's permission to reapply for admission, and was therefore not deportable under section 241 (a)(1) of the Act.

For the following reasons, we are convinced that the revocation of the respondent's conditional landing permit and his removal from the United States in December 1962 under section 252(b) of the Act constitutes an "arrest and deportation" pursuant to section 212(a)(17) and that his deportability under section 241(a)(1) of the Act is established by his admission as a lawful permanent resident on March 23, 1970, without obtaining permission to reapply.

Section 242(b) of the Act provides a generally applicable procedure for determining the deportability of an alien. Section 252(b) provides a specific procedure for the deportation of alien crewmen holding D-1 landing permits. The summary procedure set forth in section 252(b) under which the conditional permit to land may be revoked and the alien deported without a hearing represents a narrow exception to the deportation procedures found in section 242(b). It governs only the alien crewman whose D-1 permit is formally revoked prior to the departure of his vessel. 8 C.F.R. 252.2; *Matter of M-*, 5 I&N Dec. 127 (BIA 1953).

Section 252(b) was designed to address the serious problem created "by alien crewmen who deserted their ships and secreted themselves in the United States." Congress recognized that "the temporary 'shore leave' admission of alien seamen who remain illegally constitutes one of the most important loopholes in our whole system of restrictions and control of the entry of aliens into the United States." *Immigration and Naturalization Service v. Stanisic*, 395 U.S. 62, 73-74 (1969). Congress' commitment to address and correct the growing problem of illegal crewmen in this country is further demonstrated by its refusal to permit crewmen adjustment of status or suspension of deportation. Sections 244(f) and 245(c) of the Act, 8 U.S.C. 1254(f) and 1255(c).

We fail to see how an interpretation which would relieve an alien crewman deported under section 252(b) of the requirement of obtaining

consent to reapply for admission under section 212 (a)(17) would further Congress' intent to address the serious illegal crewman problem. Such an interpretation would elevate the alien crewman to a favored status under the Act, a result clearly not intended by Congress and one that we decline to adopt.[5] While section 252(b) provides for the summary deportation of certain alien crewmen, it does not follow that once so deported the alien is relieved of the requirements of section 212(a)(17) applicable to all deported aliens. *See generally Matter of Lee,* 17 I&N Dec. 275 (Comm. 1978); *Matter of Bunag,* 13 I&N Dec. 103 (D.D. 1967).

The record establishes that the respondent was properly deported as an alien crewman in December 1962 under the provisions of section 252(b) of the Act. We conclude that the respondent was required to obtain consent to reapply for admission under section 212(a)(17) at the time of his admission as a lawful permanent resident on March 23, 1970, that the immigration judge improperly terminated the proceedings, and that the respondent's deportability under section 241(a)(1) of the Act has been established by evidence which is clear, convincing, and unequivocal as required by *Woodby* v. *INS,* 385 U.S. 276 (1966).

The respondent has not had an opportunity to apply for discretionary relief. We note that he has resided in the United States for more than 13 years, that he is married to a United States citizen, and that the record does not disclose any adverse factors. The respondent appears to be eligible for *nunc pro tunc* permission to reapply for admission pursuant to *Matter of Ducret,* 15 I&N Dec. 620 (BIA 1976). Accordingly, we will sustain the Service's appeal and remand the record to afford the respondent an opportunity to apply for that and any other available discretionary relief.

ORDER: The appeal is sustained.

FURTHER ORDER: The immigration judge's order terminating the deportation proceedings is vacated.

FURTHER ORDER: The record is remanded to the the immigration judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.

---

[5] Respondent's reliance on *United States* v. *Wong Kim Bo, supra,* and *United States* v. *Farias-Arroyo, supra,* is misplaced. Neither case involved alien crewmen deported under section 252(b) of the Act. They concerned criminal convictions under section 276 of aliens deported under section 242. The court in *United States* v. *DiSantillo, supra,* did not reach the issue presented by this appeal, reversing the judgment of conviction solely on the basis of the statute of limitations.